### Noble et al. v. Hubbard et al.

Jan. 24, 1941.

Wharton Noble for appellants.

C. R. Luker and S. E. Begley for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

Appellant, Wharton Noble, obtained a judgment in the Laurel Quarterly Court against J. M. Hubbard for $200, interest and cost on a note which the latter, as surety, had executed to him. An execution issued on that judgment was returned "no property found." Noble is an attorney and Hubbard had formerly consulted with him regarding the title to a tract of land containing 15½ acres, and he instituted suit against Hubbard in the Laurel Circuit Court upon the nulla bona to subject this land in satisfaction of his judgment. In that action judgment was entered directing the sale of the property, Noble became the purchaser at the decretal sale and the master commissioner executed a deed to him in May, 1939.

After obtaining a deed to the property, Noble caused to be issued a writ of possession, which was placed in the hands of the sheriff. Whereupon, Hanson Hubbard and wife instituted this action to enjoin Noble and the sheriff from dispossessing them and to quiet their title to the property. Hanson is a son of J. M. Hubbard and his petition as amended alleged his father had on January 14, 1937, conveyed this property to him

and his wife; that their deed was unrecorded because their grantor's deed was not of record; that they had learned for the first time on or about October 21, 1939, that Noble had a deed to the property made him by the master commissioner on May 24, 1939; that they had been living on the property and were in the open, adverse possession of same before it was conveyed to them, which fact Noble could have discovered by reasonable diligence; that the deed made him by the master commissioner is champertous and void and should be canceled.

Noble's answer as amended was a traverse, followed by an affirmative plea that he was a bona fide purchaser for value without notice of Hanson's deed; that before purchasing the property he searched the records in the county court clerk's office and did not find where J. M. Hanson had conveyed the property, but did find where he was listing it for taxation; that at the time Noble purchased same, the deed had not been made to the son; that the deed to Hanson was not made in good faith, but for the purpose of defrauding the father's creditors; that the son had actual knowledge of the suit to subject the land to Noble's debt and as he had not intervened in that action, or let his claim to the land be known, he is now estopped.

The chancellor held Hanson had no knowledge or information of the nulla bona suit brought by Noble against his father. He further held that Noble knew, or by the exercise of reasonable diligence could have known, Hanson and his wife were in possession of the property, claiming title thereto, and that Noble failed to make them parties to his action to subject the land to the satisfaction of his judgment debt. Hanson and his wife were held to be the owners of the property, their title thereto was quieted against Noble and the deed made the latter by the master commissioner was ordered canceled.

The record does not show the date of the note upon which judgment was obtained in the quarterly court, but we do not regard that as material to a decision of this case. If it be admitted that the possession of Hanson under his unrecorded deed would make it necessary on the part of Noble to inquire as to the character of his possession, the record amply justifies the conclusion that

it was not adverse to his father, therefore the deed constituted no notice to a bona fide purchaser, or to creditors. The deed was made to the son on January 14, 1937, and he testified he occupied the property even before that, claiming to be the owner thereof. He admits he was present in February, 1938, when his father employed Noble to bring suit to divest Martha Bowling and her children of their interest in this land and his father paid the filing fee in such action. The father testified he paid $5.50 to have that suit filed. Noble testified it was filed in the name of Martha Bowling, Guardian, etc., v. Omalee Benge et al., and it was agreed between Martha Bowling and J. M. Hubbard that he would become the purchaser at the contemplated judicial sale. O. J. Minnix, circuit court clerk, testified the suit was actually filed on February 2, 1938, and was dismissed on February 14, 1939, for want of prosecution. The reason given by Noble for the suit's dismissal was that J. M. Hubbard lost interest after it was filed. Hanson never mentioned to Noble that he was claiming title to the property under his unrecorded deed, although he must have known Noble was a creditor of his father and he allowed his father, in his presence, to contract with Noble for the bringing of this action wherein his father had agreed to purchase the property, without once intimating that he had an unrecorded deed and was asserting title thereunder. This evidence is most convincing that the occupancy of Hanson was not inconsistent with the title of his father and therefore did not constitute notice to Noble.

In Davis v. Allen, 280 Ky. 798, 134 S. W. (2d) 617, it was held that where the grantee in an unrecorded deed resided with the grantor on the land it conveyed, the grantee's possession was not notice to an attaching creditor. If the grantee's residence on the land with the grantor is not such possession that will give notice to attaching creditors, certainly Hanson's possession in this case was not sufficient to put the judgment creditor, Noble, on notice, since the father in Hanson's presence employed Noble to bring suit to clear the title, with the father agreeing to purchase the property at the contemplated decretal sale, and Hanson did not open his mouth.

An unrecorded deed under section 496, Kentucky Statutes, is not good as against a purchaser for value

without notice or against subsequent creditors, or antecedent creditors who prior to the recording of the deed have secured some equity in the property. Stone v. Keith, 218 Ky. 11, 290 S. W. 1042; Arnett v. Stewart, 266 Ky. 577, 99 S. W. (2d) 704.

Having reached this conclusion, it is not necessary to discuss certain unusual facts and circumstances surrounding the execution of the deed from father to son, or to determine whether or not it was a fraudulent conveyance. The circumstances to which we allude are that after the real estate was conveyed to the son and at the time proof was taken in this action, the son had title to all real estate formerly owned by the father, yet the latter in executing a bond made an affidavit that he owned two tracts of land near Pittsburg, Ky., when in fact he had conveyed both to his son, and one of which was the 15½ acres in controversy. The father testified he was paid cash for the property under consideration, while the son testified he ''logged it out.'' There was some intimation by appellant that the deed involved in this action had been post-dated, but the deputy county clerk of Laurel county (now the clerk), who wrote the deed and took the acknowledgment, was not called as a witness. Indeed, the grantor was not called to the stand for his son and it was Noble who introduced the father as a witness.

It is insisted by Hanson that as Noble acquired this property while he was in the adverse possession thereof, Noble's acquisition was champertous under section 210, Kentucky Statutes. Such argument is unsound. If it could be said that Hanson were in the adverse possession at the time the commissioner deeded the property to Noble, that fact would not make Noble's acquisition champertous. In a long and unbroken line of decisions we have held that the champerty statute does not apply to judicial sales. Preston v. Breckinridge, 86 Ky. 619, 6 S. W. 641, 10 Ky. Law Rep. 2; Martin v. Turner, Ky. App., 115 S. W. 833; Anderson v. Daugherty, 182 Ky. 800, 207 S. W. 474; Id., 169 Ky. 308, 183 S. W. 545; Lashley v. Duvall, 226 Ky. 685, 11 S. W. (2d) 708; Chapman v. Hounshell, 258 Ky. 214, 79 S. W. (2d) 685.

Appellee made a motion for a writ of certiorari under section 742, Civil Code of Practice, to have the clerk of the Laurel Circuit Court copy into this tran-

script for use on this appeal the record of the proceeding in the quarterly court, also, the record in the nulla bona proceeding, which by reference in the pleadings and proof in the instant case were made a part thereof. This motion was passed to merits and is now overruled. In the schedule filed by appellant, the clerk was directed to copy the entire record in the instant case and in addition thereto certain depositions taken in the nulla bona proceeding. Appellee's counsel accepted notice of the filing of the schedule as shown by endorsement thereon. Had appellee desired the records in the other proceedings copied into this record, it was his duty under section 737, subsection 4, par. b, to have filed a schedule with the clerk directing him to copy same. However, we might add the additional proceedings appellee seeks to have incorporated in this record have no bearing on the questions before us.

The judgment is reversed for proceedings consistent with this opinion.